**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| EVELYN BLEVINS, | ) | |
| | ) | Case No. 1:18-cv-53 |
| *Plaintiff,* | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Christopher H. Steger |
| MARION COUNTY et al., | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OPINION

Before the Court are a motion to dismiss Plaintiff Evelyn Blevins's second amended complaint for failure to state a claim (Doc. 48) and a motion for summary judgment (Doc. 58) filed by Defendants Marion County, Sheriff Bo Burnett, in his official and individual capacities, Tammy McAlpin,[1] in her official and individual capacities, and Deputy Jonathan Wingo,[2] in his official and individual capacities. The second amended complaint also asserts claims against John/Jane Does 1-10 (the "Doe Defendants"), who appear to be unnamed Sheriff's deputies. (Doc. 46, at 1, 8.)

### I.    DOE DEFENDANTS

As an initial matter, the ninety-day window for serving the Doe Defendants has passed. *See* Fed. R. Civ. P. 4(m). In addition, the deadline for discovery passed on February 10, 2020

---

[1] Defendant Tammy McAlpin's last name is incorrectly spelled "McCaplan" in the second amended complaint. (Doc. 48, at 1; *see* Doc. 46, at 1.)

[2] Blevins's original, first amended, and second amended complaints do not include Deputy Wingo's first name, but Defendants represent that his first name is Jonathan. (*See* Docs. 1-1, 17, 46; 47.)

(*see* Doc. 26, at 2), and Blevins has not moved to amend her complaint to substitute named parties for the Doe Defendants. Accordingly, the Doe Defendants will be **DISMISSED WITHOUT PREJUDICE**. *See, e.g.*, *Campbell v. City of Springboro*, 788 F. Supp.2d 637, 664 n.22 (S.D. Ohio 2011).

## II. MOTION TO DISMISS

Defendants Wingo, McAlpin, and Burnett, in their official and individual capacities, and Marion County have filed a motion to dismiss all of Blevins's claims against them for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 48).

### a. Allegations in the Second Amended Complaint

This complaint arises from Defendants' alleged denial of medical care to Blevins during her detention at Marion County Jail (the "Jail"). (*See generally* Doc. 46.) Blevins seeks damages for a stroke she suffered after jail officials allegedly deprived her of her blood pressure medication and failed to provide prompt access to emergency medical care. (*See generally id.*)

On February 6, 2017, Blevins was arrested and transported to the Jail on suspicion of theft. (*Id.* at 4.) As soon as she arrived at the Jail, Blevins requested her medications for high blood pressure. (*Id.*) Blevins was incarcerated for approximately two weeks before she was medically evaluated. (*Id.*) At the evaluation, she told medical personnel that she needed blood pressure medications. (*Id.*) However, during "med call," when prescriptions were passed out to the other inmates, Blevins got in line but was not given any medication. (*Id.*) Blevins further alleges that the EMT and the Deputy Jailer, neither identified by name in the complaint, were "rude and inconsiderate" and told her that she "didn't need any f@#$ing blood pressure medicine." (*Id.* (expletive represented as in original).) When she asked them if they could take

her blood pressure, they told her the machine "didn't work and needed batteries." (*Id.* at 5.) Another time, an unnamed individual told Blevins "to get the 'f@#$' out of line." (*Id.* (expletive represented as in original).) At some point, Blevins's mother brought her medication to the Jail, but "no one administered the medication [or] informed [Blevins's mother] that [Blevins] could not have it." (*Id.*)

During "the ensuing days," Blevins developed headaches, "felt that she had sand in her eyes," and ended up "sick and lying on the floor." (*Id.*) Unnamed deputies on duty, allegedly "implementing the policies of Defendant Sheriff Burnett," "repeatedly denied [Blevins] access" to the medication, despite her requests, her medical evaluation, and her notification to the deputies "that she was in immediate crisis." (*Id.*) She filed a grievance with the Jail, but Deputy Wingo tore it up and threw it back at her. (*Id.*)

On February 28, 2017, Blevins had a stroke and was not treated for "several hours" afterwards. (*Id.*) An unnamed deputy commented to another deputy that Blevins "'looked pretty bad.'" (*Id.*) One of those deputies then called the Jail physician. (*Id.*) The Jail physician, who was not onsite, directed the deputy to call an ambulance. (*Id.*) When paramedics arrived, they took her blood pressure twice. (*Id.*) It read "184 over 134." (*Id.*) A paramedic told the deputies that Blevins "needed immediate transport." (*Id.* at 6.) "The staff" called the Jail Administrator, Tammy McAlpin, who "stated that the County wasn't paying for an ambulance transport to the hospital." (*Id.*) The paramedics left, and the deputies "left [Blevins] in the room" and didn't "check on" her. (*Id.*) Blevins's "face was already numb and her arms were going numb, particularly her right side." (*Id.*)

Eventually, the deputies "threw [Blevins] an orange jumpsuit and laughed and watched while she struggled to put [it] on" due to her stroke-induced loss of motor skills. (*Id.*) They

handcuffed her and watched her struggle to get into a deputy's car for transport to the hospital, then watched again without assisting her when she got out of the car at "Parkridge East." (*Id.*) Two deputies, including one whose nickname was "Flea," "goof[ed] off" while present with Blevins in the hospital. (*Id.*) One of the physicians recommended transferring Blevins to "Parkridge East in Chattanooga." (*Id.*) When a nurse told Blevins she had been released from custody, the deputies said nothing. (*Id.*) Blevins signed some "paperwork," and the deputies left. (*Id.*)

On or about February 28, 2017, Blevins's mother picked her up from the hospital and asked the doctor what they were supposed to do. (*Id.* at 7.) The doctor told them that Blevins "was released from custody and should attend to her medical needs." (*Id.*) On March 2, 2017, when Blevins was at home on bed rest following medical instructions, she learned that she had been charged with escape, probation violation, and failure to appear. (*Id.*)

As a result of her stroke, Blevins now "shakes and convulses . . . uncontrollably." (*Id.*) She has "lost motor function." (*Id.*) She lost her home. (*Id.*) She paid over $5,000 in attorneys' fees, probation costs of $1200, court fees of $539, and some additional amount in bond fees. (*Id.*) "[O]n information and belief," she has spent over $100,000 in medical bills and expenses, including prescriptions. (*Id.*) Blevins "has been forced to" move herself, her husband, and her teenage son in with her mother. (*Id.*) She has also become more reclusive and has been unable to enjoy spending time with her teenage son. (*Id.*)

With respect to the roles of Marion County and Sheriff Burnett, Blevins alleges that she was checked into the Jail "pursuant to procedure, policy, custom, practice and pattern of receiving inmates" and that Burnett "is the official responsible for setting and enforcing policies, customs, and practices of the [Marion County Sheriff's] Department." (*Id.*) Blevins further

alleges that "Sheriff [Burnett] approved the discriminatory conduct alleged herein" by "approv[ing] of custom or pattern and practice actions, which include, in this case the failure to provide necessary medication and the failure to provide access to medical care" and by failing "to discipline or hold those deputies who discriminated against Blevins accountable for their actions." (*Id.* at 4.) Blevins further alleges that "[t]hrough consistent pattern and practice or policy and custom, Sheriff [Burnett] and his representatives, including Deputy Wingo, repeatedly and continually failed to address Blevins's disabilities." (*Id.*) Blevins identifies her disabilities as her high blood pressure and "heart-related ailments." (*Id.* at 5.) Blevins also asserts that deputies working on the night of her stroke "were given considerable discretion and authority to handle Blevins'[s] issues." (*Id.* at 6.)

Blevins filed her original complaint on February 26, 2018 (Doc. 1-1), in Marion County Circuit Court, and Defendants Wingo, McAlpin, Burnett, and Marion County, removed the case to this Court on March 21, 2018. (Doc. 1.) In her second amended complaint, Blevins asserts the following claims against all Defendants:

(1) "denial of access to medical care";

(2) "violation of T.C.A. § 41-2-109";

(3) discrimination in violation of

    (a) the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*,

    (b) Blevins's right to equal protection under 42 U.S.C. § 2000d,

    (c) Blevins's right to equal protection under 42 U.S.C. § 1981,

    (d) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794,

(e) Blevins's right to equal protection under 42 U.S.C. § 1983 and § 1985,

(f) violation of "the Equal Protection Clause of the Fourth Amendment";

(g) violation of the Equal Protection Clause of the Fourteenth Amendment; and

(4) state-law negligence.

(Doc. 46, at 7–33.)

### b. Standard of Review

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement need not contain detailed factual allegations, but it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief.

*Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### c. Analysis

#### i. *Official-Capacity Claims*

The Court first addresses Blevins's official-capacity claims against Sheriff Burnett, Deputy Wingo, and Jail Administrator McAlpin. A suit against a public servant in his official capacity is a suit against the governmental entity itself. *See, e.g.*, *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (noting that an official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent."). Because an official-capacity suit is treated as a suit against the governmental entity, courts within the Sixth Circuit generally dismiss official-capacity claims as redundant if the local governmental entity is already a party. *See, e.g.*, *Baar v. Jefferson Cty. Bd. of Educ.*, 476 F. App'x 621, 634–36 (6th Cir. 2012) (affirming a district court's dismissal of the redundant claims); *see, e.g.*, *Centaur v. Jones*, No. 3:15-CV-00449, 2017 WL 108050, at *1 (E.D. Tenn. Jan. 11, 2017) ("It is redundant . . . to sue both government officials as government officials and the government that employs them. When this redundancy occurs, this Court has dismissed the

officials."); *Shepherd v. Floyd Cty.*, No. 15–54–ART, 2015 WL 5315730, at *1 (E.D. Ky. Sept. 10, 2015); *Malone v. Corr. Corp. of Am.*, No. 3:13–cv–1212, 2013 WL 6498067, at *7 (M.D. Tenn. Dec. 11, 2013). Because Blevins has also sued Marion County, her claims against Burnett, Wingo, and McAlpin in their official capacities are redundant and will be **DISMISSED**.

### ii. Claims for Denial of Access to Medical Care

Blevins's second amended complaint does not specify a legal basis for her claim for denial of access to medical care. The Court is left to construe the claim as one under 42 U.S.C. § 1983 for violation of her rights under the Fourteenth Amendment to the United States Constitution. To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must establish that she was deprived of a federal right by a person acting under color of state law. *Haywood v. Drown*, 556 U.S. 729, 731 (2009); *Dominguez v. Corr. Med. Svcs.*, 555 F.3d 543, 549 (6th Cir. 2009); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). In other words, a plaintiff must plead facts sufficient to show: (1) the deprivation of a right, privilege, or immunity secured to her by the United States Constitution or other federal law; and (2) that the individual responsible for such deprivation was acting under color of state law. *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir. 2000).

The Due Process Clause of the Fourteenth Amendment requires that governmental authorities provide medical care for pretrial detainees' serious medical needs. *City of Revere v. Mass. General Hosp.*, 463 U.S. 239, 244 (1983); *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir.

2005).[3] To state such a claim under § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* A prison official is deliberately indifferent "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). Thus, "[a] constitutional claim for denial of medical care has objective and subjective components." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).

The objective component requires an inmate to establish that he is suffering from a sufficiently serious medical need, such that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A medical need is "serious" if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would easily recognize the necessity for medical treatment. *See Mahan v. Plymouth County House of Corr.*, 64 F.3d 14, 17 (1st Cir. 1995) (citing *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990). The "seriousness" of a medical need may be determined by the effect of the delay of treatment. *See Gaudreault*, 923 F.2d at 208.

The subjective component requires an inmate to show a prison official possessed a culpable state of mind. *Farmer*, 511 U.S. at 834. "A defendant possess[es] a sufficiently culpable state of mind when he acts with deliberate indifference." *Carter v. City of Detroit*, 408 F.3d 305, 312 (6th Cir. 2005) (internal citation omitted). "Put simply, 'deliberate indifference to

---

[3] The Eighth Amendment's ban against cruel and unusual punishment, on the other hand, requires prison authorities to provide medical care for *convicted* prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nonetheless, "the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." !! *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).

a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Johnson*, 398 F.3d at 875 (quoting *Farmer*, 511 U.S. at 836). A plaintiff must also demonstrate that his "harm was caused by a constitutional violation," and that "the [entity or municipality] is responsible for that violation." *Foster v. City of Cleveland Heights*, 81 F.3d 160, 1996 WL 132181, at *1 (6th Cir. Mar. 21, 1996). Thus, "prison officials . . . may be found free from liability if they responded reasonably" to a risk of serious harm, "even if the harm ultimately was not averted." *Id.* at 844; *see also Mangum v. Repp*, 674 F. App'x 531, 540 (6th Cir. 2017). However, "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates [a] constitutional infirmity." *Blackmore*, 390 F.3d at 899.

Blevins claims that Defendants refused to provide her access to her blood pressure medication, in "conscious disregard of [her] rights, welfare, and safety." (Doc. 46, at 9.) The Court considers her specific allegations against each Defendant in turn.

### 1. Marion County

"[M]unicipalities and other local government units [are] included among those persons to whom § 1983 applies." *Monell*, 436 U.S. at 690. However, entities may not be held liable under § 1983 through a *respondeat superior* theory of recovery simply on the basis that they employ tortfeasors. *Id.*; *Spears v. Ruth*, 589 F.3d 249, 256 n.6 (6th Cir. 2009) (citing *Monell*, 436 U.S. at 691); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (stating that municipalities "are not vicariously liable under § 1983 for their employees' actions") (citations omitted). Rather, municipalities may only be liable when there is a direct causal link between a policy or custom of the municipality or entity and the alleged constitutional violation. *Id.* at 694. Put

differently, a plaintiff must establish that the municipality engaged in a "policy or custom" that was the "moving force" behind the deprivation of the plaintiff's rights. *Id.* at 694; *see also Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) ("Under *Monell*, the [defendants] cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom . . . leads to, causes, or results in the deprivation of a constitutionally protected right."). Thus, to establish § 1983 liability on the part of an entity, a plaintiff must "identify the policy, connect the policy to [the entity] and show that the particular injury was incurred because of the execution of that policy." *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (internal quotation marks and citation omitted); *but see Lott v. Swift Transp. Co.*, 694 F. Supp. 2d 923, 928 (W.D. Tenn. 2010) (noting that, while "[i]dentifying the precise policy or custom may help make the complaint's allegations more plausible, . . . categorically viewing such a failure as dispositive in every case involving § 1983 claims risks imposing a higher standing of pleading than the Federal Rules of Civil Procedure mandate." (internal citation omitted)).

"A litigant can show a policy or custom through reference to: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016); *see also D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014). In cases where no formal policy exists, "the critical question is whether there is a particular custom or practice that 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Jones v.*

*Muskegon Cty.*, 625 F.3d 935, 946 (6th Cir. 2010) (quoting *McClendon v. City of Detroit*, 255 F.

App'x 980, 982 (6th Cir. 2007)).

In her second amended complaint, Blevins's allegations relating to a Marion County

custom or policy and to Sheriff Burnett as a final decisionmaker are as follows:

> [Blevins's] claims against Defendants County and Sheriff Bo Burnett are based
> on their maintaining and permitting the practices, policies and customs described
> in Paragraphs 12–40. In particular, [Blevins] is informed and believes and based
> thereon alleges that Sheriff Bo Burnett, as the official policy maker for Defendant
> County, was aware of the inadequate medical care provided to inmates and
> detainees in the County jails, including the inadequate medical treatment provided
> to the victims of lack of care authorized by deputies assigned to the jail. On
> information and belief, instead of taking proper steps to provide access to and for
> proper medical care for inmates and detainees, Sheriff Bo Burnett ignored the
> problem and condoned, encouraged, fostered and/or ratified the denial of access
> to proper medical care to inmates and detainees in the County jails. [Blevins] is
> further informed and believes and thereon alleges that Defendants Sheriff Bo
> Burnett and County have ratified the individual deputies' unconstitutional conduct
> towards [Blevins].

(Doc. 46, at 8–9.)

Nothing in the paragraphs to which Blevins refers, however, can be fairly characterized

as a custom or policy or as a non-conclusory factual basis from which the Court could infer that

any inmates, other than Blevins, were denied access to medical care or that Sheriff Burnett

ratified such denials. Indeed, none of these paragraphs, nor any other portion of the complaint,

describes the denial of medical care to any inmate other than Blevins, and no facts support the

allegation that Sheriff Burnett knew about and condoned the Jail employees' alleged failure to

provide Blevins access to medical care. Paragraph 12 recites that each Defendant acted, at all

times mentioned in the complaint, as the agent of each other Defendant. (*Id.* at 3.) Paragraph 13

alleges that all Defendants "acted knowingly, maliciously, and with reckless or callous disregard

for the constitutional rights of Plaintiff," thus justifying punitive damages. (*Id.* at 4.) Finally,

Paragraphs 14 through 40 recount the facts of Blevins's arrival at the Jail and her inability to

access her medication, despite informing Jail employees and medical personnel of her need for it. (*Id.* at 4–7.) Blevins's allegations regarding Marion County's unconstitutional customs or policies are completely devoid of any factual support or description of the allegedly unconstitutional policies and are, therefore, insufficient to infer the existence of an actionable custom or policy supporting a claim for municipal liability under § 1983. Accordingly, Blevins has not stated a plausible § 1983 claim against Marion County for deliberate indifference to a serious medical need, and this claim will be **DISMISSED**.

### 2. Sheriff Burnett

A defendant's personal involvement in the deprivation of constitutional rights is required to establish individual liability under § 1983. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.5 (6th Cir. 2005). A plaintiff must affirmatively show that each defendant he seeks to hold liable, through that defendant's own actions, has violated his constitutional rights. *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014). A mere assertion of *respondeat superior* will not suffice. *Iqbal*, 556 U.S. at 676; *see also Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A plaintiff must show "that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (internal citation omitted); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *see also Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (explaining that "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

Blevins alleges Sheriff Burnett was personally involved in unconstitutional behavior, generally asserting that he "maintain[ed] and permit[ed] the practices, policies, and customs" of Marion County described in the second amended complaint. (Doc. 46, at 8.) Blevins alleges that Sheriff Burnett, on information and belief, "as the official policy maker for Defendant County, was aware of the inadequate medical care provided to inmates and detainees in the County jails, including the inadequate medical treatment provided to the victims of lack of care authorized by deputies assigned to the jail." (*Id.* at 9.) Blevins further alleges that Sheriff Burnett "ignored the problem and condoned, encouraged, fostered and/or ratified the denial of access to and for proper care for inmates and detainees in the County jails." (*Id.*) Blevins "is further informed and believes and thereon alleges that [Sheriff Burnett has] ratified that individual deputies' unconstitutional conduct towards her." (*Id.*)

Even though the Court views the factual allegations in the complaint in the light most favorable to the plaintiff, these allegations are the kind of threadbare, conclusory recitations that the Court is not bound to accept. *See Iqbal*, 556 U.S. at 679; *Papasan*, 478 U.S. at 286. The second amended complaint is devoid of well-pleaded facts that would allow the Court to plausibly infer that Sheriff Burnett was personally involved in the deprivation of prisoners' constitutional rights generally or the deprivation of Blevins's rights specifically. Thus, Blevins's complaint fails to state a plausible claim upon which relief may be granted under § 1983 against Defendant Sheriff Burnett. Blevins's denial-of-medical-care claim against Sheriff Burnett will therefore be **DISMISSED**.

### 3. Jail Administrator McAlpin and Deputy Wingo

Unlike the lacking allegations against Sheriff Burnett, Blevins plausibly alleges that Jail Administrator McAlpin and Deputy Wingo denied, or at least delayed, medical evaluation or

treatment for Blevins after they were aware of her need. (*See* Doc. 46, at 5–6.) She also plausibly alleges this medical need was serious, given her resulting stroke. *See Gaudreault*, 923 F.2d at 208. The second amended complaint alleges that Jail Administrator McAlpin refused to call an ambulance to transfer Blevins to a hospital, despite a paramedic's indication that she "needed immediate transport," potentially causing delay while the Jail staff arranged an alternative and less costly method of transportation. (Doc. 46, at 6); *Blackmore*, 390 F.3d at 899 ("When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates [a] constitutional infirmity."). Blevins alleges she experienced greater pain and distress because she had difficulty getting in and out of the deputy vehicle. (Doc. 46, at 6.) Additionally, an ambulance would have delivered medical attention to Blevins sooner. (*Id.*)

Blevins has likewise stated a claim against Deputy Wingo. Blevins alleges that Deputy Wingo knew she requested prescription medication but tore up her written grievance seeking that medication. (*Id.* at 5.) This is sufficient to plausibly support that Deputy Wingo acted in conscious disregard of her serious medical need. *Blackmore*, 390 F.3d at 899. Although it is not clear from the facts in the second amended complaint that Blevins will be able to establish the subjective component of the deliberate-indifference standard—that is, that Deputy Wingo had enough information to, as a lay person, recognize the necessity that Blevins receive medical treatment, *see Mahan*, 64 F.3d at 17—Blevins has plausibly stated a claim against him at the pleading stage. Therefore, the Court finds that Blevins's allegations against Jail Administrator McAlpin, and Deputy Wingo plausibly state a claim which would entitle Blevins to relief under § 1983. Defendants' motion to dismiss will therefore be **DENIED** as to these claims.

### iii. *Claims Under the ADA and Section 504 of the Rehabilitation Act*

Blevins next alleges that Defendants discriminated against her "on the basis of disabilities including, but not limited to, high blood pressure in violation of 42 U.S.C. § 12131 et seq." (Doc. 46, at 15.) She claims at least two qualifying disabilities—high blood pressure and "her weight"—and that "Defendants owed Blevins the duty to not discriminate against her and to provide her with equal access to medical care." (*Id.* at 16.)

Title II of the ADA, which incorporates Section 504 of the Rehabilitation Act, *see* 29 U.S.C. § 704, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim for violation of the ADA, a plaintiff must allege that (1) she is disabled as defined in the statute, (2) she is "otherwise qualified" to continue in the program, and (3) she was excluded from the program on the basis of her disability. *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998).

Assuming Blevins has sufficiently alleged the first two elements, she has failed to allege facts satisfying the third element—that she was denied access to a program because of her disability. *See id.* Blevins does not allege that individuals who needed other types of treatment received it, which those with high blood pressure and/or a disability due to their weight did not receive treatment. *See, e.g.*, *McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58–59 (D. Me. 1999) (finding a claim and refusing to grant summary judgment when the plaintiff showed evidence of a policy of denying HIV-positive detainees access to a prescription program and other health services that were available to HIV-negative detainees). Indeed, Blevins offers conclusory allegations that many other inmates, presumably with a range of ailments, did not receive adequate care. (Doc. 46, at 13.) As a result, Blevins's allegations do not plausibly

support an inference that Defendants withheld care from her because of her high blood pressure or her weight while providing treatment to others who requested medication. Blevins, therefore, fails to state a claim for violation of the ADA and Section 504. Accordingly, these claims will be **DISMISSED** as to all Defendants.

### iv. Equal-Protection Claims Under 42 U.S.C. § 2000d, 42 U.S.C. § 1981, 42 U.S.C. § 1985, the Fourth Amendment, and 42 U.S.C. § 1983 and the Fourteenth Amendment

Blevins's "equal protection" claims (Counts 3(b), (c), (e), (f), (g)) are similarly infirm. First, 42 U.S.C. § 2000d prohibits exclusion from federally assisted programs "on the ground of race, color, or national origin." Blevins does not allege she was discriminated against for any reason other than her disabilities, so she has not stated a claim under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d. *See Alexander v. Sandoval*, 532 U.S. 275, 278 (2001) (holding that this provision allows a cause of action only for intentional exclusion on the basis of race, color, or national origin). Similarly, 42 U.S.C. § 1981 provides that all persons within the jurisdiction of the United States shall receive "the full and equal benefit of all laws . . . as is enjoyed by white citizens . . . ." Since Blevins does not allege that she was discriminated against on the basis of race or otherwise deprived of a benefit that white citizens enjoy, she does not state a claim under 42 U.S.C. § 1981.

Blevins also fails to state a claim under 42 U.S.C. § 1985. To state a claim under 42 U.S.C. § 1985, a plaintiff must allege, *inter alia*, a conspiracy to deprive a person of her civil rights. Among other reasons, Blevins does not state a § 1985 claim, because she fails to allege any facts plausibly supporting the existence of a conspiracy between any Defendants to deprive her of her rights. There are no allegations in the complaint of an agreement between any

Defendants to keep her from receiving her medication or other medical evaluation or treatment.

Blevins's Fourth Amendment claim is likewise inapposite. The Fourth Amendment forbids unreasonable searches and seizures. U.S. Const. amend. IV; *see also Terry v. Ohio*, 392 U.S. 1, 8–9 (1968). Blevins explains in her response to Defendants' motion to dismiss that her Fourth Amendment claim is premised on "the unlawful seizure of her person in her Second Amended Complaint." (Doc. 57, at 15.) She relates this claim to the denial of medical care, stating that she, "as an incarcerated individual, [was] limited to accepting what Sheriff Burnett and others as her jailer determine she should receive." (*Id.* at 16.) Blevins has not alleged that her arrest or detention was unlawful. (*See generally* Doc. 46.) And she does not cite a single case in which the Fourth Amendment has been applied in this context. Accordingly, the Court finds that Blevins fails to state a Fourth Amendment claim.

Finally, Blevins's equal-protection claims under 42 U.S.C. § 1983 and the Fourteenth Amendment fail because they do not comport with the factual allegations of her complaint. "The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws." *Dixon v. Univ. of Toledo*, 702 F.3d 269, 278 (6th Cir. 2012) (internal quotation marks omitted). "The threshold element of an equal protection claim is disparate treatment" of similarly situated individuals. *Id.*

Blevins alleges that Defendants discriminated against her on the basis of her disabilities. (*See* Doc. 46, at 18–32.) But, as the Court has already concluded, Blevins's factual allegations do not logically, let alone plausibly, support claims that she was discriminated against because of her disabilities. *See supra*, Section I(c)(iv).[4] Blevins refers to no other specific inmates, nor

---

[4] Blevins claims in briefing that "Blevins was not provided her medication for high blood pressure, but other inmates were." (Doc. 57, at 10.) But the complaint contains no such allegations, and, even if it did, that allegation would actually undermine the assertion that

does she characterize any groups of inmates such that the Court could plausibly infer those inmates were similarly situated to Blevins.  (*See generally* Doc. 46); *see Dixon*, 702 F.3d at 278. Instead, Blevins's allegations related to her discrimination claims are "legal conclusions couched as . . . factual allegations" rather than plausible factual allegations the Court is bound to accept as true.  *Papasan*, 478 U.S. at 286.

Because no factual allegations plausibly support Blevins's claims of discrimination, her claims under 42 U.S.C. § 2000d, 42 U.S.C. § 1981, 42 U.S.C. § 1985, the Fourth Amendment, 42 U.S.C. § 1983, and the Fourteenth Amendment will be **DISMISSED**.

### v. *Negligence and Claims under Tennessee Code Annotated § 41-2-109*

The Tennessee Governmental Tort Liability Act ("GTLA") prohibits claims against an employee when the immunity of the governmental entity is removed with respect to that claim. *See* Tenn. Code Ann. § 29-20-310(b).  The GTLA removes immunity for injury proximately caused by negligent acts or omission of employees within the scope of their employment "except if the injury arises out of . . . civil rights."  Tenn. Code Ann. § 29-20-205(2).  Courts have construed the term "civil rights" to include "claims arising under the federal civil rights laws, *e.g.*, 42 U.S.C. § 1983 and the United States Constitution."  *Campbell v. Anderson Cty.*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010); *see id.* ("These torts are alleged to have been committed solely in the context of the violation of [the plaintiff's] civil rights—this is in essence a civil rights suit."); *Brooks v. Sevier Cty.*, 279 F. Supp.2d 954, 960 (E.D. Tenn. 2003).

Because Blevins's state-law claims—the negligence claims and claims under Tennessee Code Annotated § 41-2-109—are predicated on Defendants' alleged violation of her civil rights

---

Defendants McAlpin and Wingo discriminated against Blevins because of her high blood pressure.  No allegations in the complaint relate to any differential treatment of Blevins due to her weight.  (*See generally* Doc. 46.)

in denying her medical care in violation of the Due Process Clause of the Fourteenth Amendment, Marion County is immune from suit. Accordingly, Blevins's negligence claims and claims under Tennessee Code Annotated § 41-2-109 against Marion County will be **DISMISSED**.

On the other hand, because Marion County is immune with respect to the negligence claim, Blevins may maintain such claims against individual Defendants Burnett, McAlpin, and Wingo. Tenn. Code Ann. § 29-20-205(2); *see Baker v. Snyder*, No. 1:05 CV 152, 2006 WL 2645163, at *11 (E.D. Tenn. Sept. 14, 2006).

## III.    MOTION FOR SUMMARY JUDGMENT

Defendants also seek summary judgment as to all Blevins's claims against them (Doc. 58). The Court now applies Defendants' motion for summary judgment to Blevins's remaining federal claims—her § 1983 claims against Defendants Jail Administrator McAlpin and Deputy Wingo, for deliberate indifference to a serious medical need in violation of the Due Process Clause of the Fourteenth Amendment. Defendants assert, with respect to these remaining claims, that they are entitled to summary judgment because the undisputed evidence establishes that "there was no improper denial of medical treatment to [Blevins] while she was incarcerated" in the Jail and that there is "no basis for individual liability" as to Defendants McAlpin or Wingo. (*Id.* at 2.)

Blevins responds that the pleadings are sufficient and that the motion for summary judgment must therefore be denied, citing almost exclusively to the second amended complaint rather than to evidence in each of her responsive filings. (*See* Docs. 64, 65, 66.) Despite this inapposite response, the Court will carefully consider the entire record in ruling on Defendant's motion for summary judgment.

### a. Evidence in the Record

Evidence in the record includes the affidavits of Sheriff Burnett, Deputy Wingo, Jail Administrator McAlpin, and Ms. Blevins, as well as Blevins's deposition testimony.[5]

Sheriff Burnett avers that, during Blevins's incarceration from February 6, 2017, to February 28, 2017, medical services were provided to inmates by Adcock Medical Services, PLLC ("Adcock Medical"), and that Adcock Medical was responsible for all medical decisions, including those on which Blevins bases her claims. (Doc. 58-1, at 2.) Sheriff Burnett further avers that he was "not aware of any requested treatment" by Blevins and did not deny her or direct that she be denied any treatment. (*Id.*) Sheriff Burnett's affidavit does not mention Defendants McAlpin or Wingo. (*See generally id.*)

Deputy Wingo and Administrator McAlpin aver that Adcock Medical provides testing, including blood-pressure monitoring, for inmates and distributes their medication. (Doc. 58-2, at 3; Doc. 58-3, at 2–3.) Deputy Wingo further avers that he did not deny Blevins any medical treatment or direct that she be denied any treatment. (Doc. 58-2, at 3.) According to Deputy Wingo, he was not working on the night Blevins was transported to the emergency room and did not make any decisions as to how she would be transported or what medical treatment she would receive. (*Id.*)

Administrator McAlpin avers that, during Blevins's incarceration, she did not take any actions to deny Blevins medical attention or direct that she be denied any treatment. (Doc. 58-3, at 3.) McAlpin avers that, on February 28, 2017, she "was contacted and advised that [Blevins] was making complaints and requesting medical attention." (*Id.*) Thereafter, Puckett Emergency

---

[5] The affidavit of Rosemary Moon, Blevins's mother, is also part of the record (Doc. 30-2); however, it does not contain any mention of Defendants Wingo or McAlpin, nor does it contain any other evidence relevant to the remaining claims.

Medical Services "was contacted" and came to the Jail. (*Id.*) The corrections officer on shift later contacted Dr. Charles Adcock, presumably a physician with Adcock Medical, who "advised that [Blevins] should be transported to the hospital emergency room but that such transport could be by private vehicle." (*Id.*) A deputy then drove Blevins to a hospital emergency room. (*Id.*)

Blevins's affidavit (Doc. 30-1) contains one mention each of Wingo and McAlpin, as follows:

> Deputy Wingo would curse me, and at all times during my incarceration would angrily respond to me—akin to a bully at a child's school, selective with whom he rendered kindness. I was not selected to receive his kindness.
>
> . . .
>
> I was never told why Tammy [McAlpin] told the ambulance to leave and not transport me to the hospital on February 28, 2017.

(Doc. 30-1, at 2–3.)

In Blevins's deposition, she testified that she told Tammy Smith, a Jail employee, that she "had an absolute splitting headache" and asked how she could get treatment for her blood pressure. (Doc. 58-4, at 11.) Blevins avers that Smith told her "all that stuff had to [be] approved by Tammy McAlpin." (*Id.*) There is no evidence suggesting McAlpin learned of Blevins's medical needs. (*See generally* Doc. 58-4.) With respect to Deputy Wingo, Blevins testified that Deputy Wingo was "there one time" when she was waiting in line for medication and someone told her to get out of the line. (*Id.* at 14.) She avers that she asked him if there was anything that she could do to get it, and he responded that if she was not on "the list," there wasn't anything she could do. (*Id.*) Blevins "believe[s]" that was "the extent of [her] interaction with [Deputy Wingo] regarding [her] request for medical treatment." (*Id.*) There are no further references to Defendants McAlpin or Wingo in the excerpts of Blevins's deposition that have been filed with the Court. (*See generally* Doc. 58-4.)

### b. Standard of Review

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden to inform the court of the basis for its motion to identify the portions of the evidence in the record that demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). At this stage, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, that party must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

When ruling on a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 587; *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient

evidence from which a jury could reasonably find for the non-movant. *Anderson*, 477 U.S. at 248–49. "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Policastro*, 297 F.3d at 538 (quoting *Celotex*, 477 U.S. at 322). A "mere scintilla" of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Anderson*, 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### c. Analysis

As detailed in the Court's analysis of Defendants' motion to dismiss, a prison official can only be held liable for denial of medical care under § 1983 if he is deliberately indifferent, that is, "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The objective component of deliberate indifference requires an inmate to establish that he is suffering from a sufficiently serious medical need, such that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. The subjective component requires an inmate to show a prison official possessed a culpable state of mind. *Id.* A plaintiff must also demonstrate that his "harm was caused by a constitutional violation," and that "the [defendant] is responsible for that violation." *Foster*, 1996 WL 132181, at *1. Thus, "prison officials . . . may be found free from liability if they responded reasonably" to a risk of serious harm, "even if the harm ultimately was not averted." *Id.* at 844.

A plaintiff may rely on circumstantial evidence to prove subjective recklessness, "and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that

the risk was obvious." *Farmer*, 511 U.S. at 842. But "[t]he plaintiff also must present enough evidence from which a jury could conclude that [the] defendant so recklessly ignored the risk that he was deliberately indifferent to it." *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (internal quotation marks and citation omitted). The relevant inquiry

> is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health[.]"

*Farmer*, 511 U.S. at 843 (internal citation omitted).

In this case, Blevins has not presented evidence from which a reasonable jury could conclude that either Administrator McAlpin or Deputy Wingo recklessly ignored her serious medical need. *See Rhinehart*, 894 F.3d at 738. With respect to Deputy Wingo, the record—when viewed in the light most favorable to Blevins—only shows that he was rude to her and that, while she was in line for medication, he told her she had to be on a list to receive it and did nothing to help her obtain blood-pressure medication or be added to the list. No evidence suggests that he was aware that she had a serious medical need or that her medical need while in his presence was so obvious that he, as a lay person, should have been aware of it. *See Mahan*, 64 F.3d at 17. Although the evidence shows that he knew she was requesting medication, no evidence suggests that he knew she was entitled to receive it or that any medical personnel had prescribed it for her. Finally, given that all medical treatment at the Jail was provided by Adcock, there is no evidence that Defendant Wingo had any ability to help Blevins obtain her medication or other medical treatment sooner. A reasonable jury could not find that Deputy Wingo was deliberately indifferent to Blevins's serious medical needs so as to violate her due process rights under the Fourteenth Amendment.

With respect to Administrator McAlpin, the only evidence regarding her involvement is that Blevins does not know why McAlpin had her transported in a deputy's car (Doc. 30-1, at 2–

3) and that Dr. Adcock cleared the "private vehicle" mode of transport for Blevins in lieu of an ambulance ride. (Doc. 58-3, at 3.) Given the evidence of Dr. Adcock's clearance of non-medical transport and the lack of any contradictory evidence showing that Administrator McAlpin knowingly disregarded a serious risk to Blevins by allowing her to be transported to the hospital in this way, a reasonable jury could not find her liable for deliberate indifference in violation of the Fourteenth Amendment.

For the foregoing reasons, the sole remaining federal claims, Blevins's § 1983 claims against Defendants McAlpin and Wingo for deliberate indifference will be **DISMISSED**.

## IV.    SUPPLEMENTAL JURISDICTION OVER STATE-LAW CLAIMS

When parties are non-diverse, as here, this Court may hear state-law claims only through the exercise of supplemental jurisdiction. 28 U.S.C. § 1367. District courts have the discretion to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."). Because all federal claims will be dismissed by virtue of the Court's ruling on Defendants' motion to dismiss or motion for summary judgment, the Court will decline to exercise jurisdiction over Blevins's state-law negligence claims and claims under Tennessee Code Annotated § 41-2-109.

Continuing to exercise supplemental jurisdiction should only be done "in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [ ] concern over needlessly deciding state law issues." *Id.* (internal quotation omitted). When "all federal law claims are eliminated before trial, the balance of factors to be considered under pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward

declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The factors set forth in 28 U.S.C. § 1367 weigh against exercise of supplemental jurisdiction over Blevins's negligence claims. The Court finds that the interests of judicial economy and abstention from needlessly deciding state-law issues weigh in favor of declining to exercise supplemental jurisdiction over these claims. Accordingly, the Court will **DISMISS** Blevins's state-law negligence claims and claims under Tennessee Code Annotated § 41-2-109 against Sheriff Burnett, Jail Administrator McAlpin, and Deputy Wingo **WITHOUT PREJUDICE**.

## V.    CONCLUSION

For the foregoing reasons, Blevins's claims against the Doe Defendants are hereby **DISMISSED WITHOUT PREJUDICE**. Defendants' motion to dismiss (Doc. 48) is **GRANTED IN PART** and **DENIED IN PART**, and Defendant's motion for summary judgment (Doc. 58) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**, with respect to the claims dismissed on other grounds. Blevins's state-law negligence claims and claims under Tennessee Code Annotated § 41-2-109 against Sheriff Burnett, Jail Administrator McAlpin, Deputy Wingo are hereby **DISMISSED WITHOUT PREJUDICE**. All other remaining claims, except Blevins's § 1983 claims against Defendants McAlpin and Wingo for deliberate indifference to a serious medical need in violation of the Due Process Clause of the Fourteenth Amendment, are hereby **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Blevins's § 1983 claims against Defendants McAlpin and Wingo for deliberate indifference are hereby **DISMISSED WITH**

**PREJUDICE** due to the absence of a genuine issue of material fact pursuant to Federal Rule of Civil Procedure 56. All other pending motions (Docs. 60, 72–79) are **DENIED AS MOOT**.

      **AN APPROPRIATE JUDGMENT WILL ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**